Opinion issued July 2, 2009 















In The

Court of Appeals

For The

First District of Texas






NO. 01-05-00950-CR

__________


DANIEL LAYTON, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the County Criminal Court at Law No. 2

Harris County, Texas

Trial Court Cause No. 1266371






MEMORANDUM OPINION

 A jury found appellant, Daniel Layton, guilty of the misdemeanor offense of
driving while intoxicated (DWI), (1) and the trial court assessed his punishment at
confinement for 180 days in the Harris County jail, probated for one year, and a $300
fine. In his sole point of error, appellant contends that the trial court erred in
admitting evidence contained in the videotape of his traffic stop in which the arresting
officer and appellant discuss "appellant's use of Xanax and Valium, without requiring
the State to show it was relevant with reliable and competent scientific evidence." 

 In a February 15, 2007 opinion, a majority of a panel on this Court previously
affirmed the trial court's judgment, holding that "the trial court did not abuse its
discretion in admitting the portion of the videotape that contained appellant's
statements regarding Xanax and Valium" and appellant had waived any challenge "to
[the arresting officer's] statements regarding the use and effect of Xanax and Valium"
because appellant "did not make a specific objection" to these statements. (2)
 Layton
v. State, 263 S.W.3d 179, 182 (Tex. App.--Houston [1st Dist.] 2007), rev'd, 280
S.W.3d 235 (Tex. Crim. App. 2009). 

 The Texas Court of Criminal Appeals reversed, concluding "that error was
preserved as to all evidence referencing [a]ppellant's use of Xanax and Valium" on
the videotape, including the arresting officer's statements, and that the "trial court
erred in allowing the evidence of [a]ppellant's use of Xanax and Valium to be
introduced to the jury without the State first showing that the evidence was relevant
to [a]ppellant's intoxication." Layton v. State, 280 S.W.3d 235, 240, 242 (Tex. Crim.
App. 2009). The court noted that, at trial, the jury had been instructed that the term
"intoxicated" meant "not having the normal use of mental or physical faculties by
reason of the introduction of alcohol into the body," and that the charge made no
reference to any other controlled substances or a combination of substances. Id. at
240-41 (emphasis added); see also Tex. Penal Code Ann. § 49.01(2)(A) (Vernon
Supp. 2008) (defining "intoxicated" to mean "not having the normal use of mental or
physical faculties by reason of the introduction of alcohol, a controlled substance, a
drug, a dangerous drug, a combination of two or more of those substances, or any
other substance into the body"). Thus, the court stated,"[T]o be relevant, . . . the
evidence needed to influence the jury's determination of whether [a]ppellant was
intoxicated by alcohol, not another substance" or another substance in combination
with alcohol. Id. at 241 (emphasis added). Moreover, the court concluded, 

 The essential element disputed by [a]ppellant is that the evidence
of his use of medications should not have been admitted without the
State establishing that it was relevant to his intoxication. There is no
evidence as to the dosage taken by [a]ppellant, the exact times of
ingestion, or the half-life of the drug in the human body. Considering
the length of time between the ingestion of the medication and the time
of arrest, a lay juror is not in a position to determine whether Xanax and
Valium, taken more than 12 hours before arrest, would have any effect
on [a]ppellant's intoxication. There was no testimony indicating that
Officer Allen[, the arresting officer,] had any medical knowledge
regarding the uses of Xanax and Valium, or about the effect of
combining the medications with alcohol.


Id. at 241-42. Concluding that the trial court erred in the admission of this evidence
regarding appellant's use of Xanax and Valium and the arresting officer's statements
concerning the effect of appellant's use of these medications, the Court of Criminal
Appeals remanded the case to our Court for a harm analysis. Id. at 242.

 We reverse and remand.

Factual Background

 At trial, Houston Police Officer C. Allen testified that at 4:17 a.m. on October
27, 2004, he saw appellant driving a car that had stopped at a red traffic light and was
protruding into a crosswalk. After the traffic light turned green and appellant
proceeded through the intersection, Allen activated his emergency lights, and
appellant pulled over in a nearby parking lot. When Allen approached appellant, he
smelled a strong odor of alcohol on appellant's breath and noticed that appellant
spoke with slurred speech and was very talkative and cooperative. Allen asked
appellant if he had been drinking, and appellant told Allen that he had five to six
drinks, with the first one being at 6:00 p.m. and the last one around 12:00 a.m. 
Appellant denied being intoxicated, but agreed that he was "buzzed." 

 The State then introduced, over appellant's objection, the entire videotape of
the traffic stop, including appellant's and Officer Allen's discussion of appellant's
use of Xanax and Valium. The videotape reveals that, after Allen's initial inquiries
into whether appellant had been drinking, Allen asked appellant if he takes any
medications. After appellant acknowledged that he takes both Xanax and Valium, 
Allen made an audible gasp and explained, "It's probably not a good idea to be
drinking on top of those." Appellant responded that the medications had been
prescribed by his doctor. Allen reiterated his opinion that it was not a good idea for
appellant "to be drinking on top of that." Allen then asked appellant whether he had
"read the little inserts" for these medications and, after appellant stated that he had
read the inserts, Allen stated that the inserts for those medications provided warnings
regarding the effects of combining alcohol with the medications and the possible
side-effects of drowsiness. Appellant explained to Allen that his doctor had
prescribed the medications for his blood pressure and high stress. Allen then disputed
appellant's reasons for using the medications and asserted that the medications were
not for blood pressure but instead were for anxiety. Allen then more specifically
asked appellant what time he had taken these medications, and appellant explained
that he had not taken Valium since 2:00 p.m. the day before and had not taken Xanax
at all on the day before. 

 Following these discussions, Allen conducted a series of field sobriety tests,
including the horizontal-gaze-nystagmus (HGN) test, the one-leg-stand test, the walk-and-turn test, and a modified alphabet test, from which he concluded that appellant
was intoxicated. Allen arrested appellant and transported him to a police station,
where appellant refused to take a breath test until he had an opportunity to speak with
an attorney.Harmful Error

 A violation of evidentiary rules that results in the erroneous admission of
evidence is non-constitutional error. See Tex. R. App. P. 44.2(b); see also Johnson
v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). The appropriate harm analysis
is therefore the one set out in Texas Rule of Appellate Procedure 44.2(b), which
dictates that a non-constitutional error "that does not affect substantial rights must be
disregarded." Taylor v. State, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008) (quoting
Tex. R. App. P. 44.2(b)). A substantial right is affected when an error has a
substantial and injurious effect or influence in determining a jury's verdict. King v.
State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Therefore, a criminal conviction
should not be overturned for non-constitutional error if the appellate court, upon
examining the record as a whole, has fair assurance that the error did not influence
the jury, or had but slight effect. Cobb v. State, 85 S.W.3d 258, 272 (Tex. Crim. App.
2002). Generally, the improper admission of evidence does not constitute reversible
error if the same facts are proved by other properly admitted evidence. See Brooks
v. State, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999) (holding that any error in
admission of hearsay testimony was harmless in light of other properly admitted
evidence proving same fact). 

 In assessing the likelihood that the jury's decision was adversely affected by the
error, we consider everything in the record, including any testimony or physical
evidence admitted for the jury's consideration, the character of the alleged error, and
how it might be considered in connection with other evidence in the case. Motilla v.
State, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also consider the jury
instruction given by the trial judge, the State's theory and any defensive theories,
closing arguments, and voir dire, if material to the claim. Id. at 355-56. 

 Here, the State asserts in its appellate briefing that appellant's use of Xanax and
Valium was probative on the issue of whether appellant was intoxicated. The Court of
Criminal Appeals has, of course, rejected this contention, noting, first, that the jury
charge referenced only intoxication by alcohol and, second, that there was no evidence
regarding "the dosage taken by [a]ppellant" or that the Xanax and Valium, "taken more
than 12 hours before" appellant's arrest, "would have any effect on [a]ppellant's
intoxication." Layton, 280 S.W.3d at 242. As further noted by the Court of Criminal
Appeals, there was no testimony that Officer Allen "had any medical knowledge
regarding the uses of Xanax and Valium, or about the effect of combining the
medications with alcohol." Id. Yet, despite these evidentiary deficiencies, and
"[w]ithout a showing that Xanax and Valium, taken more than 24 hours and 14 hours
prior, respectively, would have had a synergistic effect on [a]ppellant's degree of
intoxication by alcohol," id. at 241, the trial court allowed the State to introduce into
evidence, through the videotape, appellant's recorded statements that he had previously
taken these medications. More importantly, the trial court allowed the State to introduce
into evidence Allen's multiple admonitions to appellant that it was not "a good idea to
be drinking on top" of those medications and Allen's statements that the "inserts" to
those medications contained warnings regarding the combination of alcohol with the
medications as well the possible side effect of drowsiness. We note that Allen made all
of these statements prior to his inquiry into when appellant had last taken these
medications. Although our review of the record shows that the State did not repeatedly
refer to these medications during its direct examination of Allen, the State did refer to
appellant's admissions during its closing argument and also played a portion of the
videotape during closing argument. (3)

 The State emphasizes in its original appellate briefing with this Court that the
"State had great need" for the challenged evidence regarding appellant's use of Xanax
and Valium (4) in light of the fact that appellant disputed the issue of intoxication at trial,
refused the breath test at the police station, and had attempted to explain his "marginal"
performance on the field-sobriety tests in the videotape. The State candidly agrees in
its briefing that appellant "presented significant defensive evidence" in an effort to
overcome the State's evidence regarding his performance "on both the HGN test and the
field sobriety tests." As part of his "significant defensive evidence," appellant presented
his optometrist, who testified that appellant suffered from an "obvious" eye disorder that
inhibited appellant's eyes from tracking together, which possibly accounted for his poor
performance on the HGN test. Appellant also presented his general physician, who
testified that appellant suffered from, among other conditions, knee pain, scoliosis,
nystagmus, and bone spurs in his feet. Appellant's physician explained, in significant
detail, how appellant's conditions adversely affected appellant's balance and ability to
perform the field sobriety tests. Appellant's physician also noted that Officer Allen had
instructed appellant to stand on one leg even after appellant notified Allen of a knee
injury. Finally, appellant presented Dr. Troy Walden, who testified that appellant's
obvious eye disorder disqualified him as an appropriate candidate for the HGN test and
that Allen improperly administered the one-leg-stand test by continually interrupting
appellant during the test, which he contended "biases the result of the test." After
reviewing the videotape, Walden expressed his opinion that appellant did not show
signs of being intoxicated. 

 We recognize that the State presented Officer Allen's testimony that appellant
performed poorly on the HGN and field sobriety tests and that, in Allen's opinion,
appellant was intoxicated. We also recognize that appellant admitted that he had five
to six alcoholic beverages over a six-hour period approximately four hours before he
was stopped and that he was "buzzed." However, in contrast to this evidence, there was
also evidence that appellant performed well on some of the field sobriety tests, including
testimony that appellant performed a modified alphabet test "perfectly" after realizing
a mistake during his first attempt. Additionally, as set forth above, and as conceded by
the State, appellant presented "significant defensive evidence" suggesting that he may
been an improper candidate for the tests that Allen administered, Allen erred in
performing the tests, and appellant may not have been intoxicated at the time of the stop. 
Appellant also presented the testimony of a booking officer who testified that appellant
did not show signs of mental impairment or slurred speech when brought to the police
station, although he stated that he could smell an odor of alcohol on appellant's breath. 
 In sum, because, as even the State agrees, the State had "great need" for the
challenged evidence based upon appellant's "significant defensive evidence," we cannot
conclude with "fair assurance" that the trial court's error in admitting the challenged
portions of the videotape "did not influence the jury" or had "but a slight effect" on the
jury's finding that appellant committed the offense of DWI. Accordingly, we hold that
the trial court's error affected appellant's substantial rights. See Tex. R. App. P. 44.2(b). We sustain appellant's sole point of error.

Conclusion

 We reverse the judgment of the trial court and remand for proceedings
consistent with our opinion.



 Terry Jennings

 Justice


Panel consists of Justices Jennings, Alcala, and Higley.

Do not publish. See Tex. R. App. P. 47.2(b).
1. See Tex. Penal Code Ann. § 49.04 (Vernon Supp. 2008). 
2. In support of its holding, the majority of the panel asserted that it was "clear that the
State did not introduce appellant's statements regarding his use of Xanax and Valium
to establish that appellant was under the influence of those drugs while driving." See
Layton v. State, 263 S.W.3d 179, 182 (Tex. App.--Houston [1st Dist.] 2007), rev'd,
280 S.W.3d 235 (Tex. Crim. App. 2009). However, the State itself actually argued
in its briefing that "the taking of Xanax and Valium [were] probative of appellant's
intoxication." Id. at 183 (Jennings, J., dissenting).

3. The record before us does not reveal what portion was played.
4. In fact, in its briefing with this Court, the State does not even discuss the issue of
harm, but argues solely that the evidence was admissible.